And will you call the last case of the afternoon, please? Mr McCracken. Good afternoon, Your Honors. This case comes before the court on the dismissal of the appellant's second amendment complaint. The plaintiff in this case, Toby Meyers, was employed by Galesburg Hospital Ambulance Service. They provide ambulance services to the Galesburg area. He was the director of field operations, which is, the person that runs the day-to-day operations of the ambulance service. He managed 70 employees, over 70 employees, which is most of the employees for the Galesburg Hospital Ambulance Service. He filed a suit for interference with his prospective business advantage. He had been an employee for 13 years for the ambulance service. He had never been reprimanded. Who was his supervisor during that time? His supervisor during that time resigned actually the week before. On threat of being fired, right? Yes. His name was? Name doesn't matter. It's just that it was his supervisor. The guy that would have reprimanded him basically got canned and resigned instead of getting canned a week or so before. Yes, Your Honor. And there was no allegation that Toby Meyers ever had any employment deficiencies or any sort of deficiency in his job or anything that he has ever done wrong. As an employee at will, did they have to say he did anything wrong or did they just say, thanks for your service, we no longer need you? They are entitled to say that, Your Honor, but they have to go through the proper procedures to effectuate that termination. Here there's allegations in the complaint that they circumvented the board and they committed an ultra-virus action on behalf of the board in terminating him. How do you commit an ultra-virus action on behalf of the board? I mean, either the action's ultra-virus or it isn't, right? They met in the late evening at one of their houses, it's alleged in the complaint, and the three individual defendants came up with this decision and told the new director, his boss, to fire him, which he did. And the board knew nothing about it? No. Did the board ratify it? Because if they didn't, it sounds like he didn't fire him. We're here on the allegations of the complaint. If we had the opportunity for discovery, I could more intelligently answer your questions. But it is alleged that they had no idea, the rest of the board had no idea that this was happening. And the issue in this case is whether their actions meet the willful and wanton defense that the board members have. There's an immunity statute for not-for-profit directors of the board of not-for-profit organizations. We're pretty well familiar with that. What is the real issue? Why should Judge Mangieri be reversed on this decision? Because this is a tort, and the facts of the complaint allege intentional conduct by the defendants. By definition, that meets the willful and wanton exception. So the plaintiff has alleged all the necessary elements of the tort, therefore the complaint should have been sustained. What was the perspective business advantage that they interfered with? After 13 years, one more year of employment. He had never been told differently. He never did anything wrong as an employee. There was no expectation that he was ever going to be fired. I mean, I don't think there's a requirement that he shows up every day wondering the next if he's going to have a job just because he's an at-will employee. What's your best case on this as a tort in a similar factual situation of an at-will employee? This is a very unusual case. I did plenty of research on this issue, and as far as board of directors and ultra-virus actions, there are not very many cases on it. In fact, I don't think there's one like this at all. So there was not a lot of precedent governing the pleadings in this case. And in fact, on the first complaint, Judge Mangieri said that Toby Myers met all the elements of the tort, which usually the complaint is sustained once you do that, especially if it's an intentional tort and the defense is willful and wanton conduct. Unless there are any other questions? What is it that rises to the level of willful and wanton as far as these directors? If the board, if the individual defendants would have taken this to the full board and had a regular meeting, voted to terminate him, Toby Myers wouldn't have a claim. They didn't do that. It's reasonable to presume and infer that they intended to harm Toby Myers by not taking it to the board. Well, as I understand it from the pleadings, it was the new supervisor who said, sorry, you're fired, not my decision. Well, he also said he disagreed with the decision. He disagreed with it, and it was the board that didn't know what he said. And actually, there's also allegations that it harmed the actual entity that they're representing. Well, then that entity could bring a lawsuit if they feel harmed. But where does your client have standing to sue for damage to somebody else? His relationship was with Galesburg Hospital Ambulance Service, his business relationship. These individual defendants went outside their duties as board members and acted on their own by going outside and circumventing the process that was supposed to be followed. I get it, but you're saying, and you argued in your brief, that they damaged the Galesburg Ambulance Service. Well, if the Galesburg Ambulance Service felt that these folks committed a tort against them, they're the ones that have to bring the action, right? If I work for Caterpillar and I think somebody fires me and I thought, yeah, I can't live without me, you've just damaged Caterpillar, I can't sue because of you. Somebody damaged Caterpillar, Caterpillar thinks they're sued, they file a suit. You're correct, Your Honor. Originally, those allegations weren't in the first complaint. There's three complaints in this case, and it was an effort to satisfy the standards set by the court in the first ruling on the motion to dismiss. So it was more evidence added, or not evidence, more allegations added to the complaint to reflect the individual defendant's intent, and that it was more personal than any business that they would be conducting as actual board members. Did you attach or have access to the articles of incorporation or anything from the ambulance service that shows the policy violations? I believe I had a handbook, but I'm not sure I had the total articles of incorporation. I believe Applebee's counsel may have attached it to his motion to dismiss, but I'm not sure. If it's not attached in one of his motions to dismiss, then no, I never received a copy of the articles of incorporation. Thank you. All right, thank you, Mr. McCracken. Let's see if I get this right, Mr. DeNolfo? You're correct, Your Honor. May it please the court, counsel, again, my name is Steve DeNolfo, and I represent the defendants in this matter. Obviously, we're hearing about the court's order from May 15th of 2013 wherein the court entered a dismissal based on plaintiff's failure to plead facts to get around the, I'll use the word protection, provided by the not-for-profit incorporation act that provides for a willful and wanton standard in order for a cause of action to succeed against certain officers. Now, it's important, I think, just to clarify, counsel may have mentioned that originally in the original complaint, which goes back to September of 2012, that the court entered some order wherein it allegedly found that he had properly pled the elements of the interference with a business advantage. I would submit to the court, if you look at the records, and we cite it in our brief on page 98, the court itself was confused as to what the plaintiff was actually pleading. The court thought he was pleading tortious interference with an employment contract. So the cause of action was confusing to start with, Your Honor. Well, even if the court did say that, that would be an interlocutory order, would it not? Correct, and that order has no bearing, with all due respect to the lower court, it really had no bearing on why we're here today because there's been pleadings over that which didn't incorporate the prior pleadings, so they're in essence withdrawn, and it really does have no bearing. So I wanted to point that out because it doesn't carry the weight that the plaintiff in their briefs have reported to the court, it does. It's really a non-issue because by pleading with amended complaints and not incorporating or referencing the prior complaints, they become withdrawn under the case law here in Illinois. So getting to what we're actually here to talk about, Your Honor, which is the May 15, 2013 order, the court, as it had in the two prior motions that we had filed, found that the plaintiff had not pled facts to support an allegation of willful and wanton conduct by the defendants in this case. He has made statements that they've done, may have met at night, okay, but that doesn't satisfy the requirement. Whether it was ultraviolence or not may go to their authority to terminate them, but it doesn't go to whether it was willful or wanton because the case law is clear in Illinois that in order to satisfy that officers have gone outside of the protection supported by this act, there has to be two prongs, one of two things, either that they did it for their own personal gain or they did it with an intent to harm the plaintiff. Now, for the first time today, counsel has mentioned that somehow it was an intent to harm the plaintiff. I would submit to the court the only thing contained in his complaint, which is a conclusion is that the parties did it for their own personal gain, period. That's all he said. There's never been an allegation in the complaint that it was for their own personal, that there was an intent to harm the plaintiff. The first time we heard that was today. But looking at the four corners of the complaint, there are no facts, specific facts that say it was for their sole benefit. Benefit for what? I don't know. Did they hire a friend to put in there? I don't know. It's not alleged. What was the benefit? They didn't say a word in the complaint, and it's clear in the long history of case law here in Illinois that it's a fact pleading state. We get lots of conclusions. And counsel says, you know, well, if you look at the complaint, fine, but you've got to look at the case law that says you have to make reasonable inferences from the allegations contained in the complaint. Can't you make reasonable inferences from the second prong, or the second? I mean, you know. Well, they don't. Trying to influence somebody who's your boss to fire you seems to be intentional harm to you. I mean, is that reasonable inference? Well, it's not even an allegation to make in the complaint. Oh, so you're saying it doesn't even exist. It doesn't exist. It's not in the complaint. The only allegation in the complaint is that there was a few, and I'll give you the exact quote. It was that their actions taken in furtherance of their own personal interests is the only thing that's contained in the complaint. Okay. So you were actually retracting the complaint a minute ago from now. Right. I mean, you were saying that. Right. So if it was in the complaint, you probably wouldn't be here, right? I don't want to speak for the judge. I still think I would have a valid motion to dismiss, obviously, but I don't know what the judge would have done had that information been in the complaint, but it wasn't. Okay. So I'd be speculating. But your question as to case law, I think you raised the question. I have not found any cases, obviously, with the fact pattern similar to this. But if you look at the broader sense, at will employees being able to bring a cause of action for being terminated, rightly or wrongly, I've not found a cause of action premised on the theory upon which their argument exists in this matter. I found other types of cases, discriminatory in nature, perhaps things of that nature, retaliatory, all that sort of, but nothing that deals with an at will employee having the expectation of a continued business advantage. And it's not even clear from their own briefs what that advantage was. When I first read the initial brief, I thought it was he was upset he didn't get the promotion for the job. That was his new boss took following the termination of Mr. Fowler under resignation, however you want to phrase it. That was my initial gleaning from the brief. And now suddenly when you read the reply brief, it was, no, just I got to continue to work. It's not really both. He's saying that he had a reasonable expectation of continued employment and that they knew it and that he had never been reprimanded or had any performance deficiency and that because he was now a senior after the firing of his supervisor with 13 years, that it was reasonable that he ought to get the promotion over the guy with nine months. I mean, I think he's saying it's both. I did not read it that way, and my thought on that is the fact that you've had an exemplary record at an agency  because people have great records who get fired or let go for a variety of reasons. I don't think that fact in and of itself rises to the level of being able to satisfy that expectation of a continued business advantage. Further, the fact that somebody was at a company more or less than you is also irrelevant. Nobody knows what that person's background was prior to the nine months that they joined there. And again, I guess we're going a little astray of what's in the complaint. But from taking inferences, as counsel has asked this court to do, I don't think that a reasonable inference from that can be that there was some personal gain or an intent to harm, although neither were clearly pled factually in the complaint. There was a conclusion, but there was no facts. So again, we've got to focus back to what was willful and wanton that was alleged in the complaint. And the simple answer is on three occasions he was given the opportunity to plead facts that are of a willful and wanton nature, and on three occasions he failed to do so. And what by that facts for willful and wanton do you mean? Give me an example. Well, I'm going to plead his own case for him. Well, you were a moment ago. Well, then you caught me. I got a little carried away on that one too. No, in all fairness, if the willful and wanton, at least from what I've seen in the complaint, he's claiming a personal benefit or interest. Well, perhaps that they fired him in order to place this board member's son in that position. Or they fired him because they were going to be able to get a referral fee by sending somebody in to get a job at Galesburg Ambulance Service. I mean, I'm stretching things here, but you need that type of factual allegation to support getting around the willful and wanton protections that the courts and the legislature clearly want to afford these individuals that serve on not-for-profit corporations. And the complaint is void of such allegations. It's just a conclusion. And it's wrought with conclusions. And the judge, when going through this complaint, made it clear on a number of occasions, you've got to plead facts, and we never got to that point. Well, isn't the ultra-virus activity of these – how many board members, three? Three. Three. Meeting at evening without, you know, board minutes, et cetera, proper corporate procedures, because it is a corporation. And then apparently, I think, as I understood the oral argument, influencing, requesting that his supervisor fire him. Okay? Is that a willful and wanton act on their part? I would say no. It may be a void act. Okay. Or void of both. I'd have to, you know, work that through. But it's not a willful and wanton act, especially if they can't establish that there was some personal gain that they got from this or there was an intent to harm. Now, I understand when somebody loses their job, there's a harm that naturally follows from that. But the intent to harm, no, my job is I want to single this person out because I don't like them because of this. There was no intent that at least has been pled in the complaint. And I would submit back to Justice O'Brien his questions. We're at the four corners of the complaint. I do believe we attached on one of our motions some corporate documents, I believe. This goes back two years now. I'm not 100% sure. But really, as the court has indicated to us when we were arguing this, I'm stuck with the four corners of the complaint. And on those three occasions, the judge felt that the facts weren't there. Even if this weren't a not-for-profit corporation, say it was just a garden variety for-profit corporation, I mean, the Sunshine Laws don't apply, right? And there's nothing illegal about a board member, people who haven't been on the board, sitting down sometime outside of the board and discussing the company board business. As long as it's not a public entity, that's correct. There are exceptions for public entities. So that's not illegal or wrong. And I'm just trying to think. And so then the fellow gets fired who's an at-will employee. I mean, even without immunity, I'm just trying to figure out where the beef is. I don't see that there's a complaint. And obviously, I'm just addressing what was raised in the protections afforded to me based on the nature of the entity that's being served. I agree with you, Your Honor. He's an at-will employee, and there really is no expectation of continued employment of an at-will employee. Somebody could walk in tomorrow and terminate me because they don't like to sock somewhere. I mean, I agree with you. And whether it's authorized or not, I think is an issue that would have to be addressed in discovery. But even assuming that to be true, which we have to give deference to Plaintiff on, it doesn't rise to the level of Wilf and Watten, which is what he has to do to get around the protection that the legislature has given to us as a not-for-profit entity. Based on a plain reading of the complaint, based on the case law, as we cite in our briefs, and the standard of having to show one or two prongs of either personal gain or intent to harm, neither of those exist in the complaint that have been factually proven or alleged, I should say. And based on that, I think this court should, like the lower court has done on three prior cases, is to affirm the ruling that there are not Wilf and Watten allegations and that the dismissal was appropriate and should be sustained at this point. If there's no other questions, I have no additional argument. Thank you, Your Honors. Mr. McCracken, some rebuttal? The case law of Illinois clearly provides that an at-will employee can bring a case for interference with perspective and business advantage. So his status as an at-will employee is irrelevant to whether the complaint stated a cause of action. All the questions that have been asked today are more properly resolved in summary judgment. There are a lot of factual issues here that need to be determined before we can decide whether there is a case for interference with his perspective and business advantage. There is no other motive pled in the complaint except for they fired him. There's no other motive. He got caught up in a ring of firings. There's no allegation of that. The only allegation is that they met to fire him, and that's intentional. Well, but did they need a reason? Well, if that's the case, then no at-will employee could ever bring an interference with perspective and business advantage. If that's the case, I mean, I think the law is my understanding is that you can fire somebody for virtually no reason, but you just can't fire them for the wrong reason. Well, and if they would have met with the board and voted, I have no issue with that. The problem is that they met outside on their own and gave a directive. Whether he followed it or not, the director could have not fired him and said, you didn't have a board meeting, but he didn't. He stuck with the three and said, you're firing him, and they fired him. What is Toby Meyer supposed to do, show him back up to work? Well, I don't know. Good question. I don't know. In other words, if I walk into my office tomorrow and my law clerk looks over and says, you're fired, well, am I fired? Then what is the purpose of the authority? Can I just pack my bags and go home and call my lawyer and sue somebody? If this is some other business organization besides a corporation, you're right, but this is a corporation, and they need to be held to their duties for what they're organized for the purpose of. Well, you're not suing a corporation. You're suing these three individuals. Well, but they're acting as – I mean, I guess where I'm stuck with this is that I don't have any information that the board is empowered  I mean, you know, just because you're on a board doesn't mean that you are actively involved in hiring, firing, promoting of day-to-day employees. That may just be an executive decision. It's alleged in the complaint that they did not have authority to fire him. They did not have the day-to-day management authority over his employment. It is also alleged in the complaint that no other employment decision has ever been made in this manner, ever. But they did it in this instance. What you're really saying is that by their apparent authority as board directors, they pulled their clout, to use the term in Illinois, to force the supervisor, who's only been there, how many months? Well, this all happened a week after he'd been on the job. Okay, nine months. Okay. Right? Or a week after he was replaced. No. Okay, so we got a supervisor there who's a brand new person, who just got this job, and three board members come up, and he knows their board members, and say, get rid of Joe. Exactly. And so he turns around, he's been, you know, clouted, so to speak, in a manner. In fact, his head is tied. He fires Joe. Because presumably, if he would have not followed their direction, he would have been fired as well. So we don't even care. The fact that a board can't fire someone, okay, which I think Justice O'Brien says may clearly be the case, but that the supervisor has hired and fired, their interference was forcing the supervisor, indirectly or impliably, to fire Joe because they don't like Joe. Exactly. But now we're left still with it. That's not an unreasonable inference, perhaps. Some might find. Now we're left with opposing counsel's argument that you didn't plead their harm. Well, I mean. I mean, a complaint is entitled to reasonable inferences. It's difficult to say that all that needs to be alleged in the complaint is that they acted with a specific harm. The defendants would say, that's a legal conclusion. You're just presuming that. I don't know until we do depositions and do discovery whether that is the case or not. But the allegations in the complaint are certainly entitled to that inference. But even if, I mean, so a board member, you know, it looks like they're taking things from the top, right? They took the top guy out and they told the new top guy, fire number two. So even if they said, you know, it seems to me the board, at least these three, and the first one there's no question, it was the whole board, didn't like the way the place was being run by the management people, and they were bringing in new blood. So even if a board member went over, told the supervisor, hey, you know, you're our new supervisor, fire so-and-so. We don't like it. Is that welcome? In other words, what was the, is it okay to fire that role employee because you don't like him or because the board doesn't think, this new guy doesn't know what's been going on for the last 17 years. We're trying to get, we're going to breathe some new blood into this place, and we fired number one, now you fire number two. First, that's assuming that the board would have acted anyway. If he was entitled to a vote, they may have thought he'd been doing a good job for 13 years and kept him in his employment. I don't know. We haven't been able to ask the other board members what they thought of. But wouldn't, I would reasonably expect that if that were the case, I mean, just common sense is the rest of the board would have said, hey, what are you doing? Call that guy back up and tell him he hasn't been fired. Or there could have been a ringleader, and they just followed whatever the ringleader said and didn't stand up. I mean, I've seen that happen many times where they're passive. On these allegations of complaint, I don't know. Thank you. Okay. Well, thank you both for your arguments here this afternoon. That will be taken under advisement. A written disposition will be issued. And right now the board will adjourn until 9 o'clock tomorrow morning or be in recess. Be in recess. Okay. We're standing.